UNITED STATES v. 150 7/12 DOZEN LONG GLOVES.

(District Court, E. D. New York. April 5, 1909.)

1. CUSTOMS DUTIES (§ 132*)—FORFEITURE—REMISSION OF PENALTY.

No application for remission of the penalty of forfeiture of imported merchandise can be instituted, under Act June 22, 1874, c. 391, § 17, 18 Stat. 189 (U. S. Comp. St. 1901, p. 3606), until a forfeiture has been declared.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 335; Dec. Dig. § 132.*]

2. CUSTOMS DUTIES (§ 132*)—FORFEITURE—REMISSION.

An applicant, under Act June 22, 1874, c. 391, § 17, 18 Stat. 189 (U. S. Comp. St. 1901, p. 3606), for remission of the penalty of forfeiture, is not, though charged with due notice of the forfeiture proceedings, debarred from making such application by reason of failure to appear as claimant in those proceedings.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 132.*]

On Petition for Remission of Penalty.

These proceedings were initiated under Act June 22, 1874, c. 391, §§ 17, 18, 18 Stat. 189, 190 (U. S. Comp. St. 1901, p. 3606), reading as follows:

"Sec. 17. That whenever, for an alleged violation of the customs revenue laws, any person who shall be charged with having incurred any fine, penalty, forfeiture, * * * or shall be interested in any * * * merchandise seized, * * * when the appraised value of such vessel or merchandise is not less than one thousand dollars, shall present his petition to the judge of the district in which the alleged violation occurred, or in which the property

---

is situated, setting forth truly and particularly, the facts and circumstances of the case, and praying for relief, such judge shall, if the case, in his judgment, requires, proceed to inquire, in a summary manner into the circumstances of the case, at such reasonable time as may be fixed by him for that purpose. * * *

"Sec. 18. That the summary investigation hereby provided for may be held before the judge to whom the petition is presented, * * * and the facts appearing thereon shall be stated and annexed to the petition, and, together with a certified copy of the evidence, transmitted to the Secretary of the Treasury, who shall thereupon have power to mitigate or remit such fine, penalty, or forfeiture, * * * if in his opinion the same shall have been incurred without willful negligence or any intention of fraud in the person or persons incurring the same. * * *"

Herman P. Goodstein, for petitioner.

William J. Youngs, U. S. Atty., and William P. Allen, Asst. U. S. Atty.

CHATFIELD, District Judge. Upon the 20th day of October, 1908, 150 $^7/_{12}$ dozen pairs of long kid gloves were seized in this district, and proceedings for their condemnation and forfeiture, on the ground that they had been smuggled into the country and the United States thereby defrauded, were begun in this court by the filing of an information, upon the 16th of November, 1908. The marshal duly attached the gloves, published the requisite notice, and a sale was finally had upon the 28th day of December, 1908, at which the gloves brought, less expenses, $1,063.32, which is now in the registry of the court. The person in whose possession the gloves were at the time of seizure, one Marie De Louise, has since petitioned this court, under sections 17 and 18 of the act of June 22, 1874, which has superseded section 5293 of the Revised Statutes. It appeared from the record in the proceeding for condemnation and forfeiture that no one intervened as claimant or owner of the goods in response to the advertisement by the marshal, and the default in the condemnation proceedings was apparently properly taken.

The case of The Princess of Orange, 19 Fed. Cas. No. 11,431, seems to settle the first question which must be considered; that is, that in relation to certain proceedings for forfeiture, no application to remit can be instituted until a forfeiture has been declared. But in the present case the additional fact that the woman now asking to be relieved as owner of the gloves was the same individual from whose possession they were taken, and who therefore would seem to have admitted, by her failure to claim the property taken, that she had no title thereto, raises at once the question whether, as between all parties properly charged with notice by the condemnation proceedings, the decree of condemnation renders the issues involved res adjudicata, and prevents any application for remission of the forfeiture under the sections mentioned.

This point has been considered in a number of cases, especially from the standpoint of the United States, which might be called upon to pay an award for information leading to the seizure, and yet be deprived of the proceeds of the seizure if the forfeiture should be remitted. Such cases are cited below under the other question involved,

and the decision of the Supreme Court seems to be that after distribution or payment of the fund in the condemnation proceedings to the collector of customs, for the benefit of the United States, the rights of informers have been established to such an extent that a remission of forfeiture could not compel the repayment to the claimant of the informer's portion of the award, at least. But as long ago as the case of United States v. Morris, 23 U. S. 246, 6 L. Ed. 314, the Supreme Court said:

"It does not, in terms, give the power to the Commissioners of the Treasury to remit, after condemnation, and yet there can be no doubt the power extends to such cases."

In the case of State of Maryland v. Baltimore & Ohio R. R. Co., 44 U. S. 534, 11 L. Ed. 714, the doctrine is expressly affirmed, and in the Confiscation Cases, 74 U. S. 454, 19 L. Ed. 196, the Supreme Court again said:

It has been decided "that the Secretary had authority, under that act, to remit a forfeiture, at any time before or after a final decree or judgment, until the money was actually paid over to the collector for distribution."

In the case of The Laura (C. C.) 8 Fed. 612, affirmed in 114 U. S. 411, 5 Sup. Ct. 881, 29 L. Ed. 147, proceedings upon a bond were pending; the bond having been given as security in a condemnation proceeding which had been determined, and the suit having been instituted for penalty incurred by the steam vessel. The same doctrine was reaffirmed, and it was held that the penalty incurred by the steam vessel for violation of the law relating to the carrying of passengers could be remitted, even after a suit had been brought by a private individual to recover the penalty provided.

In the case of Peacock v. United States, 125 Fed. 588, 60 C. C. A. 394, the court held that:

"The petition can be acted upon after the decree is entered, as well as before. The trial by the court in this case was no invasion of the right of the Secretary of the Treasury to grant the remission of the penalty after the judgment was rendered."

The present case might be distinguished from all of those cited, in that the claimant was in default; the decree of condemnation was entered, and the rights of all claimants as against the United States thereby determined, before the present petition was filed. The cases cited simply decide that the Secretary of the Treasury has the power to consider the petition after a decree; but it would seem that, if the Congress has protected individuals from the forfeiture of their property where an injustice may have been done, by allowing the forfeiture to be remitted at any time up to the covering of the money into the treasury (for that is what payment to the collector substantially implies), it would be a hardship to hold that the claimant must at his peril defend the action at law, as well as summarily petition the Secretary of the Treasury through the court for relief.

Substantial justice seems to require that the present petition be considered, and that the final decree of distribution in the action be withheld until the petition under the sections mentioned can be heard.